

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN
XX̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶X̶XXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Arthur Stehling
County Attorney
Gillespie County
Fredericksburg, Texas

Dear Sir:

> Opinion No. O-2442
> Re: Under the facts set forth, does
> the commissioners' court have
> authority to prescribe the tele-
> phone rate:
>
> And related questions.

We have carefully considered your request for an opinion from this
Department, touching the telephone franchise contract originally
entered into by the commissioners' court of Gillespie County and
A. C. Stuart, July 19, 1924. We thank you for the brief submitted
with your letter.

We quote as follows from your communication for the factual back-
ground to your request:

"On July 19th, 1924, the Commissioners Court of Gillespie
County granted to A. C. Stuart a franchise to 'construct,
reconstruct, own, maintain, and operate a telephone exchange
plant' in the form hereto attached in which is fixed a rate
for rural subscribers of fifty cents per month as shown by
paragraph '(c)'. All rights of A. C. Stuart are not owned
by United Telephone Company.

"At the time the franchise was granted there was no incor-
porated city within the county and no telephone franchise
other than the one referred to has ever been granted by the
city of Fredericksburg which was incorporated in the year
1933. United Telephone Company has from time to time sought
an amendment to the charter in respect to the rated applicable
to the subscribers referred to in paragraph '(c)', but upon
being requested by the Commissioners Court to produce its
books to show whether or not the rate was a fair one, the
company withdrew its request."

In connection therewith, you ask the following questions:

1.  Does the commissioners' court have authority to prescribe the telephone rate?

2.  If the commissioners' court did not have the authority to prescribe the rates, was it authorized to contract a rate with the grantee in the franchise in behalf of the citizens?

3.  If the rate set does not specify whether the system is to be a grounded or metallic system, would it be applicable to a metallic system?

It should first be pointed out that a commissioners' court is not, either expressly or by necessary implication, authorized to prescribe telephone rates, and is vested with no power or control of any nature over a telephone company constructing long distance or local telephone lines in the county.  These matters simply involve powers that the commissioners' court may not exercise under Article 5, Section 18 of the Constitution of Texas, or under Article 2339, et seq., Revised Civil Statutes of Texas.  As said by the Supreme Court in the case of Commissioners' Court v. Wallace, 15 S. W. (2d) 533:

> "The commissioners' court is a creature of the State Constitution, and its powers are limited and controlled by the Constitution and the laws as passed by the legislature. Article V, Section 18, Constitution of Texas; Baldwin v. Travis County, 88 S. W. 640, Seward v. Falls County (Tex. Civ. App.) 246 S. W. 728; Bland v. Orr, 39 S. W. 558."

This principle, in an analagous situation to the one at hand, was announced in the case of Edwards County v. Jennings, 33 S. W. 585, in the following language:

> "That the commissioners' court would have the authority to contract for a sufficient water supply for jail and court-house there can be no room for doubt; but when we have a contract not only to supply the necessities of the public building, but to supply the general public with water, and providing for special privileges as to laying pipes, a very different question is presented.  Counties are political or civil divisions of the state, created for the purpose of bringing government home to the people, and supply the necessary means for executing the wishes of the people, and bringing into exercise the machinery necessary to the enforcement of local government.  Counties, being component parts of the state, have no powers or duties except those clearly set forth and defined in the constitution and statutes......
> Looking to the powers granted by the legislature by virtue of the above constitutional provision, we find that no

authority is given the commissioners' court to enter into such contracts as the one sued on in this case.....It is clear, therefore, that the attempted contract was beyond the power and authority confided in the county commissioners'.."

Consequently, this Department held in Opinion No. 1805 that a commissioners' court has no authority to grant a franchise to a power and light company covering the county of Brewster, Texas. We enclose a copy of this opinion for your information.

By statute telephone corporations are given the right to construct and maintain their lines along, upon and across any of the public roads, streets and waters of the state. They may likewise enter upon private lands to do so. They have the right of eminent domain. Articles 1416 and 1417, Revised Civil Statutes. San Antonio A. P. Ry. Co. v. S. W. Tel. & Tel. Co., 93 Tex. 313, 55 S. W. 117, 49 L. R. A. 459, 77 Am. St. Rep. 884; City of Brownwood v. Brown Telegraph & Telephone Co., (Sup. Ct.) 157 S. W. 1163. Commissioners' Courts may not restrict or enlarge upon the rights granted in these statutes; they exist independent of any action by them.

An analysis of the authority of a municipality, in this connection, will be helpful. A municipality in Texas is likewise without the power to prohibit a long distance telephone company from passing over and upon its streets, having the power only to reasonably regulate the placing of the lines and poles so as not to incommode the public. City of Brownwood v. Brown Telegraph & Telephone Co., (Sup. Ct.) 157 S. W. 1163.

The transaction of local business within the municipality is, of course, different. This may be done only with the consent of the municipality and affords a basis for the grant of a franchise by the municipality. Fink v. City of Clarendon, 282 S. W. 912.

Adverting to the questions propounded by you, we are confronted with the proposition that the commissioners' court of Gillespie County was without authority to grant a telephone franchise to A. C. Stuart and, moreover, had nothing to grant in the way of a franchise not otherwise available to the grantee. The only inquiry remaining, therefore, is whether there may be notwithstanding, certain rights springing from the franchise contract entered into as described.

That there might be is, perhaps, suggested by the cases of Athens Telephone Co. V. Athens, 163 S. W. 373, 182 S. W. 42, and Texas Telephone Co. v. Mart, 226 S. W; 497, wherein the telephone company in each case was held bound by the terms of a franchise contract in which rates were fixed, notwithstanding the absence of the right of the municipality to fix the rates to be charged by a public service corporation. There was involved in these cases,

however, the original or underlying right of the municipality to deny or grant permission to the telephone company to use the streets of the city in constructing a local telephone system. The granting of a franchise by the city bestowed a benefit upon the telephone company and the courts merely held that the company, having received such benefits, might not afterwards deny the authority of the city to contract as to the rates.

The lack of authority in these cases pertained to the fixing of rates; there existed in the minicipality the power to grant a franchise which, when granted, conferred a benefit upon the grantee and the franchise contract therefore embodied a valuable consideration. The power to make a franchise contract for telephone service for the benefit of its citizens is essential to the purpose of a municipality; it acts as a property owner and proprietor of a business enterprise for the advantage of the city and its citizens. In so doing, it acts as a distinct legal entity.

These fundamental principles are lacking as regards a county. The power to grant a franchise and thereupon confer a benefit, is non-existent in the situation where the commissioners' court of a county undertakes to grant a franchise right to a telephone company. The only logical conclusion that may be reached is that the attempted granting of a telephone franchise by a commissioners' court bestows no right or privilege and hence no benefit upon the grantee, and no consideration supports the transaction. It is a nude pact and of no force and effect.

Your questions 1 and 2 are, therefore, respectfully answered in the negative, whereupon a discussion of your third question becomes unnecessary.

> Yours very truly
>
> ATTORNEY GENERAL OF TEXAS

APPROVED JUL. 16, 1940          By

GROVER SELLERS                          Zollie C. Steakley
                                                  Assistant

FIRST ASSISTANT
ATTORNEY GENERAL

ZCS:BBB
ENCLOSURE